UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CASHMAN DREDGING AND MARINE CONTRACTING, CO., LLC, | ) ) | |
| *Plaintiff*, | ) ) | |
| vs. | ) ) ) | CIVIL ACTION NO. |
| TUG SQUARE DEAL, and its engines, tackles, apparel, appurtenances, etc., *in rem*; BARGE AGNES, and its engines, tackles, apparel, appurtenances, etc., *in rem*; and DUMP SCOW TMC 140, and its engines, tackles, apparel, appurtenances, etc., *in rem*, | ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

**VERIFIED COMPLAINT**

NOW COMES, Plaintiff, Cashman Dredging and Marine Contracting, Co., LLC, ("Plaintiff" or "Cashman"), by its and through its attorneys, and alleges as follows in support of its Verified Complaint against Defendants, TUG SQUARE DEAL, and its engines, tackles, apparel, appurtenances, etc., *in rem* (the "SQUARE DEAL"), BARGE AGNES, and its engines, tackles, apparel, appurtenances, etc., *in rem* (the "AGNES"), and DUMP SCOW TMC 140, and its engines, tackles, apparel, appurtenances, etc., *in rem* (the "TMC 140") (collectively, the "Defendants"):

**JURISDICTION AND VENUE**

1) This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2) This matter is a civil case to recover an award related to salvage services that Cashman provided to SQUARE DEAL, AGNES, and TMC 140 that is within the admiralty jurisdiction of this Court pursuant to 28 U.S.C. § 1333.

3) Plaintiff seeks jurisdiction over the *in rem* Defendants by arrest pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (the "Supplemental Rules").

4) Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(b), Rule (C)(2)(c) of the Supplemental Rules, and general maritime law.

## PARTIES

5) Plaintiff is a Massachusetts limited liability company, with a principal place of business at 549 South Street, in Quincy, Massachusetts.

6) Upon information and belief, the SQUARE DEAL is a tugboat that is used for commercial purposes and documented under the law of the United States.

7) Upon information and belief, the BARGE AGNES is a barge that is used for commercial purposes.

8) Upon information and belief, the TMC 140 is a dump scow that is used for commercial purposes.

## FACTUAL ALLEGATIONS

9) Cashman is a marine construction company.

10) At all relevant times, Cashman operated the TUG SMITH PREDATOR, its engines, tackle, apparel, appurtenances, etc. (the "SMITH PREDATOR"), a tug boat that is currently used for commercial purposes.

11) At all relevant times, Cashman operated the TUG KENDALL HERBERT, its engines, tackle, apparel, appurtenances, etc. (the "KENDALL HERBERT"), a tug boat that is currently used for commercial purposes.

12) Upon information and belief, at all relevant times, US Northeast Dredge and Marine LLC ("NE Dredging") operated the TUG BIG JAKE, its engines, tackle, apparel, appurtenances, etc. (the "BIG JAKE"), a tug boat that is currently used for commercial purposes.

13) On December 2, 2018, the BIG JAKE was towing the SQUARE DEAL, the AGNES, the TMC 140, a second barge carrying dredging equipment (the "Second Barge"), a crane barge ("Crane Barge") and a 26 foot tugboat ("26 Tug") in or around the navigable waters off Hull, Massachusetts. Hereafter, the SQUARE DEAL, the AGNES, the TMC 140, the Second Barge, the Crane Barge and the 26 Tug are collectively referred to as the "Towed Vessels." During the tow, the BIG JAKE lost control of the Towed Vessels and the flotilla of Towed Vessels broke free from the BIG JAKE and each other and were set adrift without power or steerage.

14) The BIG JAKE was able to regain control over the Crane Barge and towed it to safety. However, the BIG JAKE was unable to regain control over the SQUARE DEAL, AGNES, TMC 140, the Second Barge or the 26 Tug due to the rough sea and weather conditions.

15) The SQUARE DEAL, AGNES, TMC 140, the 26 Tug and the Second Barge were adrift without power or steerage, and left in a state of distress and peril.

16) Cashman learned that the Towed Vessels were adrift and in peril from marine radio communications and voluntarily dispatched the SMITH PREDATOR to assist after speaking with NE Dredging and the United States Coast Guard.

17) The SMITH PREDATOR arrived at the location of the SQUARE DEAL and TMC 140 on the afternoon of December 2, 2018, where the SQUARE DEAL and TMC 140 remained in peril and at risk of total loss.

18) SMITH PREDATOR salvaged and towed the SQUARE DEAL and TMC 140 to safety in Hull, Massachusetts.

19) The Captain of the BIG JAKE requested that the SMITH PREDATOR return to assist with the AGNES, the Second Barge and the 26 Tug because those vessels were drifting without power and steerage.

20) Cashman dispatched the KENDAL HERBERT to assist with the AGNES, the Second Barge and the 26 Tug.

21) Upon arriving at the location of the AGNES and the Second Barge, the KENDAL HERBERT observed that the AGNES and the Second Barge remained in peril and at risk of total loss, and that the Second Barge was capsized and sinking.

22) The Capsized Barge was unable to be saved and ultimately sank. Upon information and belief, the 26 Tug sank as well. However, the KENDAL HERBRET salvaged and towed the AGNES to safety in Hull, Massachusetts.

## COUNT I
## SALVAGE

23) Plaintiff hereby incorporates each and every allegation of the preceding paragraphs are though fully set forth herein.

24) The SQUARE DEAL, AGNES, and TMC 140 were in marine distress and peril when the SQUARE DEAL, AGNES, and TMC 140 broke free from BIG JAKE.

25) Occupants of the SMITH PREDATOR and KENDAL HERBERT and nearby vessels and their occupants were placed in extreme danger because the BIG JAKE could not regain control of the SQUARE DEAL, AGNES, and/or the TMC 140 and the other Towed Vessels.

26) Cashman voluntarily rendered services to assist and salvage the SQUARE DEAL, AGNES, and TMC 140 from their states of distress and peril.

27) Cashman was not required to assist or salvage the BIG JAKE, SQUARE DEAL, AGNES, and/or TMC 140 due to a legal duty or a contract to provide services.

28) Cashman's efforts to render assistance to and salvage the SQUARE DEAL, AGNES, and/or TMC 140 were successful in whole or in part.

29) As a result of Cashman's successful efforts and services, Cashman is entitled to an award for the salvage services rendered.

30) SQUARE DEAL, AGNES, TMC 140 and/or its owners have refused or failed to make any payment to Cashman for its salvage services.

## COUNT II
## ENFORCEMENT OF MARITIME LIEN

31) Cashman hereby incorporates each and every allegation of the preceding paragraphs are though fully set forth herein.

32) Cashman has a preferred maritime lien against the SQUARE DEAL, ANGES, and TMC 140 pursuant to 46 U.S.C. § 31301 *et seq.* and general maritime law as a result of the salvage services that Cashman performed and is entitled to enforce and foreclose on liens.

33) Cashman is entitled to an Order arresting the SQUARE DEAL, AGNES, and TMC 140 pursuant to Rule C of the Supplemental Rules, to be held by the United States Marshal for the District of Massachusetts for safekeeping until such time they are sold to satisfy Plaintiff's maritime lien for salvage services.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

A. Issue a warrant for *in rem* process, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, against the whole of the SQUARE DEAL, AGNES, and TMC 140, pursuant to Rule C of the Supplemental Rules;

B. Order that all persons or entities having or claiming any interests in the SQUARE DEAL, AGNES, and TMC 140 be cited to appear and answer under oath;

C. That Plaintiff be awarded monetary damages in an amount to be proven at trial;

D.   That this Court award Plaintiff reasonable costs and attorneys' fees; and

E.   All further relief that this Honorable Court deems just and necessary.

Respectfully submitted,

**CASHMAN DREDGING AND MARINE CONTRACTING, CO., LLC,**

By its Attorneys,

*/s/ Michael J. Daly*
Michael J. Daly, Esq. (#655838)
Nicole M. Matteo, Esq. (#693553)
PIERCE ATWOOD LLP
One Financial Plaza, Suite 2600
Providence, RI 02903
Ph: (401) 490-3424
Fax: (401) 588-5166
mdaly@piereatwood.com
nmatteo@pierceatwood.com

Dated: December 4, 2018

## VERIFICATION

I, Norman Bourque, hereby state under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

1. I am a citizen and resident of Massachusetts, and am competent to provide this verification under penalty of perjury.

2. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true to my knowledge except as to those matter stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: DECEMBER 4, 2018

_____
Norman B. Bourque, Jr.
Vice President
Cashman Dredging & Marine Contracting, Co., LLC.